
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>VICTORIA GIAMPA,<br><br>                    Debtor. | BAP No. NV-24-1111-CBG<br><br>Bk. No. 23-13014-nmc |

| | |
|---|---|
| VICTORIA GIAMPA,<br>          Appellant,<br>v.<br>SELENE FINANCE, LP, servicer for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF2 Acquisition Trust; KATHLEEN A. LEAVITT, Chapter 13 Trustee; U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee for RCF2 acquisition trust,<br>         Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Chief Bankruptcy Judge, Presiding

Before: CORBIT, BRAND, and GAN Bankruptcy Judges.

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 13[1] debtor Victoria Giampa ("Giampa") appeals the bankruptcy court's denial of confirmation of her proposed plan and dismissal of her case. Because Giampa filed a new chapter 13 petition during the pendency of this appeal, this appeal is moot, and the Panel lacks jurisdiction. Accordingly, we DISMISS the appeal as MOOT.

## FACTS[2]

### A.  Giampa's bankruptcy case

On July 24, 2023, Giampa, proceeding in pro per, filed a chapter 13 petition. In her schedules, Giampa stated she had $0 in gross monthly income and a net monthly deficiency of $4,006.84. Giampa listed her primary residence on Wellington Court in Henderson, Nevada ("Property"), which she valued at $311,700.00, but Giampa did not identify any secured claims or creditors.

On August 16, 2023, Giampa filed a chapter 13 plan. In her plan, Giampa indicated she would make one $800 payment[3] despite representing

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Giampa stated that her applicable commitment was one month. However, a document attached to the proposed plan indicated that Giampa planned to make $800/month payments for 60 months. The chapter 13 trustee requested that Giampa amend the plan to provide for the applicable commitment period, but Giampa never filed an amended or corrected plan. Trustee testified at the dismissal hearing that

that the liquidation value of her estate was $582,092.38. Giampa's proposed plan did not identify any secured claims or propose to pay any secured creditors.

Both the chapter 13 trustee ("Trustee") and creditor U.S. Bank Trust National Association, as owner trustee for RCF2 Acquisition Trust ("U.S. Bank"), objected to confirmation of the plan. U.S. Bank argued that it had a claim secured by the Property in the total amount of $617,812.26 ($342,330.68 of that being prepetition arrearage). U.S. bank argued that confirmation should be denied because Giampa's proposed plan failed to provide for monthly mortgage payments (either in the plan or directly to U.S. Bank) and failed to provide for curing or paying the prepetition arrears in contravention of § 1322(b)(5). Trustee argued that confirmation should be denied for several reasons including Giampa's failure to make plan payments and provide the requested bank statements. Trustee also argued that the proposed plan failed to meet the liquidation value test under § 1325(a)(4) and unfairly discriminated against general unsecured claims in violation of § 1322(b)(1).

Giampa's response followed a familiar, although almost always unsuccessful, refrain used by many debtors – that the creditor asserting a security interest in the real property (U.S. Bank in this case) was not the entity entitled to enforce payment on the claim because of alleged

---

although the case had been pending for over a year, Giampa had only made four $800 payments.

infirmities in the loan and assignment documents. Giampa further asserted that U.S. Bank was not a legally recognized entity and, therefore, lacked standing. As to Trustee's objections, Giampa argued that she had provided all the necessary documents and she had no disposable income so there was no applicable commitment period to amend in her plan.

Trustee filed amended oppositions to confirmation and filed a motion to dismiss ("Dismissal Motion") pursuant to § 1307(c)(1) based on Giampa's unreasonable delay that prejudiced creditors. Trustee argued that: (1) Giampa's self-reported income was a negative $4,006.84 and a debtor with a negative income does not generally qualify to be in chapter 13; (2) the plan failed to provide for all of Giampa's disposable income pursuant to § 1325(a)(3); (3) the plan failed to meet liquidation value under § 1325(a)(4) based on Giampa's $581,867.38 of non-exempt property; (4) the plan had not been amended to provide the correct commitment period; (5) Giampa refused to comply with Trustee's request for bank statements; and (6) Giampa failed to amend her schedules to disclose all personal property. Trustee noted that even though the case had been pending for over a year, Giampa had not filed an amended plan to cure the previously identified deficiencies. Trustee further argued that the case should be dismissed because using the information provided by Giampa, there was little likelihood that Giampa could ever propose a confirmable plan and, therefore, there was clearly unreasonable delay prejudicing creditors.

U.S. Bank joined Trustee's Dismissal Motion. U.S. Bank explained that it was "not receiving distributions on its claim," and that Giampa's unreasonable delay in confirming a plan was prejudicial to U.S. Bank and other creditors.

Giampa requested, and was given, an extension of time to respond to the Dismissal Motion. On April 15, 2024, Giampa filed two oppositions. Giampa continued to question U.S. Bank's claim and its authority to enforce the debt. Giampa argued that U.S. Bank did not file a timely proof of claim, was using unauthorized attorneys, was a defunct and illegitimate organization, and was falsely representing it had a secured claim against the Property. Giampa also argued that Trustee's objections were without merit because Trustee was intentionally misquoting the Bankruptcy Code, was refusing to carry out her statutory duties, and was attempting to deceive Giampa.

The bankruptcy court held a hearing on both the objection to confirmation and the Dismissal Motion and took the matters under advisement. On May 14, 2024, the bankruptcy court issued an oral ruling denying confirmation and dismissing the case pursuant to § 1307(c)(1) and (5). On May 14, 2024, consistent with its oral ruling, the bankruptcy court entered an order denying confirmation of the plan ("Order Denying Confirmation") and an order dismissing Giampa's bankruptcy case ("Dismissal Order").

Giampa timely appealed both the Order Denying Confirmation and the Dismissal Order.

## B. Post appeal events

On January 22, 2025, the BAP denied Giampa's January 13, 2025 emergency motion for stay. On February 12, 2025, the BAP received notification that on January 27, 2025, during the pendency of this appeal, Giampa filed a new chapter 13 petition in the same bankruptcy court. Consequently, the BAP issued an order suspending the current appeal. On May 12, 2025, Giampa requested that the appeal be reinstated because the automatic stay in her new case was not extended by order of the bankruptcy court. On May 16, 2025, the BAP reinstated the present appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## ISSUE

Whether the appeal is moot.

## STANDARD OF REVIEW

"This Panel can only address actual cases and controversies and, therefore, has a duty to raise the issue of mootness *sua sponte* when the parties fail to do so." *Omoto v. Ruggera (In re Omoto)*, 85 B.R. 98, 99-100 (9th Cir. BAP 1988) (citation omitted). We assess de novo our own jurisdiction, including questions of mootness. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014). Under de novo review, "we consider a matter anew, as

6

if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Neither party argues that the appeal is moot. However, before considering the merits, the Panel has an independent obligation to consider mootness *sua sponte*. *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 997 (9th Cir. 2005). Mootness is a jurisdictional limitation on this Panel's ability to dispose of an appeal because the Panel "cannot exercise jurisdiction over a moot appeal." *In re Ellis*, 523 B.R. at 677. Constitutional mootness derives from the case-or-controversy requirement of Article III of the Constitution, which limits the jurisdiction of all federal courts to actual cases and controversies. *Id.* The Ninth Circuit has stated:

> A case is moot if the issues presented are no longer live and there fails to be a "case or controversy" under Article III of the Constitution. The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot.

*In re Burrell*, 415 F.3d at 998 (internal citations and quotation marks omitted); *see also Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989) ("A case is moot if it has lost its character as a present live controversy. If events

7

subsequent to the filing of an appeal moot the issues presented in a case, no justiciable controversy is presented.") (internal citation omitted).

Here, during the pendency of this appeal, Giampa filed another chapter 13 petition ("New Case"). The commencement of a bankruptcy case "creates an estate" that includes "virtually all [Giampa's] assets." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 214 (2024) (citing § 541(a)). Specifically, under § 541(a)(1), the bankruptcy estate comprises "all legal or equitable interests of [Giampa] in property as of the commencement of the case." In a chapter 13 case, § 1306(a) provides that "[p]roperty of the estate includes, in addition to the property specified in section 541 . . . (1) all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . whichever occurs first[.]" § 1306(a)(1). This provision thus expands the bankruptcy estate's scope in chapter 13 cases beyond what § 541(a) specifies, such that "the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any . . . property acquired after filing." *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015).

Consequently, pursuant to the Bankruptcy Code, the property of the dismissed estate is now being administered solely in the New Case. Thus, if we reverse the Dismissal Order, then we would create the untenable situation of having two different bankruptcy estates exercising control over the same property at the same time, thus violating the "single estate rule."

*See e.g. Freshman v. Atkins*, 269 U.S. 121, 122-23 (1925); *Grimes v. United States (In re Grimes)*, 117 B.R. 531, 535-36 (9th Cir. BAP 1990). Under the single estate rule, it is well established that property cannot be an asset of two bankruptcy estates simultaneously. *Id.* at 536; *Bateman v. Grover (In re Berg)*, 45 B.R. 899, 903 (9th Cir. BAP 1984).

Additionally, regardless of creating a violation of the single estate rule, if the Panel were to decide the issue in her favor, it is questionable whether reinstating the dismissed case would provide any effective relief. This is because in the New Case, Giampa has the same opportunity to reorganize her affairs including disputing U.S. Bank's authority to enforce its claim and proposing a feasible chapter 13 plan.

Accordingly, Giampa's choice to file another chapter 13 case divested this Panel of jurisdiction because, even if the Panel decided the matter on the merits in her favor, it is not possible for us to provide her any effective relief.

## CONCLUSION

Based on the foregoing, we DISMISS the appeal as MOOT.